| State of Alabama<br>Unified Judicial System<br><br>Form ARCIvP-93   Rev. 5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number CV-06-1378 |
|---|---|---|
| | | Date of Filing:  Month  Day  Year  Judge Code: |

### GENERAL INFORMATION

IN THE CIRCUIT COURT OF  Montgomery County
_(Name of County)_ , **ALABAMA**

DAVID EMERSON                          v.  GUIDANT CORPORATION, ET AL.
**Plaintiff**                                    **Defendant**

**First Plaintiff**  ☐ Business  ☑ Individual        **First Defendant**  ☑ Business  ☐ Individual
☐ Government  ☐ Other                              ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box _(check only one)_ that best characterizes your action:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☑ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☑ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☑ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** _(check one):_   F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   C ☐ OTHER: _____
R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**  ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P., for procedure)

**RELIEF REQUESTED:**  ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**  M E L O 1 1 1    5/17/06
Date _____    Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**  ☐ YES  ☐ NO  ☑ UNDECIDED

**EXHIBIT**
**A**
ALL-STATE LEGAL®



| | | |
|---|---|---|
| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- 137~~2~~ |

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON, an individual,

      Plaintiff,

GUIDANT CORPORATION, ET AL,

      Defendants.

NOTICE TO:      **GUIDANT CORPORATION**
The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

D1

*2006 MAY 18 AH ... (FILED CIRCUIT COURT OF MONTGOMERY COUNTY)*

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. MELTON at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐      TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X      This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_____05/24_____,2006      _____
Date                               Clerk/Register

---

**U.S. Postal Service**
**CERTIFIED MAIL₂ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₂

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To   Guidant Corporation
Street, Apt. No.   The Corporation Company
or PO Box
City, State   2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

on (Date) _____

mmons and Complaint to _____
nty, Alabama, on (Date) _____

ire

ss Server



State of Alabama
Unified Judicial System

**SUMMONS - CIVIL**

Case Number
CV-06- 1378

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON, an individual,

GUIDANT CORPORATION, ET AL,

Plaintiff,

Defendants.

NOTICE TO:    **GUIDANT CORPORATION**
111 Monument Circle, 2900
Indianapolis, IN 46204

D2

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. MELTON at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.**

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

Date 05/24 , 2006

By: _Melissa Rittenour_

Clerk/Register

**U.S. Postal Service**
**CERTIFIED MAIL₁₀ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com₀

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Reciept Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To
Guidant Corporation
Street, Apt. No.; or PO Box No.
111 Monument Circle, 2900
City, State, ZIP+4
Indianapolis, IN 46204

PS Form 3800,

e on (Date) _____

Summons and Complaint to _____
County, Alabama, on (Date) _____

ature _____

cess Server _____

State of Alabama
Unified Judicial System

**SUMMONS - CIVIL**

Case Number
CV-06- 1378

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON, an individual,

Plaintiff,

GUIDANT CORPORATION, ET AL,

Defendants.

NOTICE TO:  CARDIAC PACEMAKERS, INC.
4100 Hamline Ave. North
St. Paul, MN 55112

D3

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. MELTON, at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐  TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure:  You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X   This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_____05/24____,2006        _____
Date                                        Clerk/Register

☐        **U.S. Postal Service**
         **CERTIFIED MAIL RECEIPT**
         (Domestic Mail Only; No Insurance Coverage Provided)
         For delivery information visit our website at www.usps.com

☐        OFFICIAL USE

         (Date) _____

         _____ mons and Complaint to _____
         _____ y, Alabama, on (Date) _____

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Date

Addres

Sent To: Cardiac Pacemakers, Inc.
Street, Apt. No.: 4100 Hamline Ave. North
or PO Box No.
City, State, ZIP+4: St. Paul, MN 55112

Server  _____

PS Form 3800, June

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON,

    *PLAINTIFF*

*vs.*

GUIDANT CORPORATION,
GUIDANT SALES CORPORATION,
and Sales representatives, CARDIAC
PACEMAKERS, INC.,and Fictitious
Defendants A, B, C, D, E, F, being those
persons, Sales Representatives, firms or
corporations whose fraud, scheme to
defraud, negligence and/or other wrongful
conduct caused or contributed to the Plaintiff's
injuries and damages, and whose true names and
identities are presently unknown to the
Plaintiff but will be substituted by amendment
when ascertained,

    *DEFENDANTS.*

**CV-06-00101-RRA**

**CV-06-1378**

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAY 18 AM 10: 37

### COMPLAINT

### PARTIES

1.    Plaintiff, David Emerson, at all times relevant herein, was and is a

resident citizen of Montgomery County, Alabama. On or about May 28, 2004, Plaintiff

was implanted with Guidant Vitality Model A155 serial number 104995 and leads that

had been manufactured by Guidant and or CPI prior to that date.

2.    Plaintiff hereby brings this action against Defendants, Guidant

Corporation, Guidant Sales Corporation (collectively referred to as "Guidant") and

Cardiac Pacemakers, Inc., ("CPI") all of which are corporations doing business in the

1

State of Alabama.

3.    Defendants Guidant and CPI designed, manufactured, tested, marketed, distributed, promoted, and sold Guidant Vitality Models and leads, directly or through wholly owned operating divisions and subsidiaries, including units manufactured prior to May 28, 2004. At all times relevant herein, Guidant was and is a corporation duly formed and existing under and by virtue of the laws of the State of Indiana. Guidant's World Headquarters are located in Indianapolis.  CPI is a Minnesota Corporation.

4.    The Plaintiffs claims occurred in Montgomery County, Alabama.

5.    Defendants Guidant Corporation and Guidant Sales are foreign corporations currently engaged in business, directly or by agent in Montgomery County, Alabama.

6.    Defendant Cardiac Pacemakers Incorporated ("CPI") is a foreign corporation located in Minnesota and does business by agent in Montgomery County, Alabama.

## FACTUAL ALLEGATIONS

7.    Cardiovascular disease is the leading cause of death for both men and women in the United States today and claims more lives each year than the next five leading causes of death combined. To treat cardiovascular disease, Guidant develops, manufactures and markets products that focus on the treatment of cardiac arrhythmias, heart failure and coronary and peripheral disease. One product line consists of implantable defibrillator systems used to detect and treat abnormally fast heart rhythms (tachycardia) that could result in sudden cardiac death, including implantable cardiac resynchronization therapy defibrillator (CRT-D) systems used to treat heart failure. An implanted defibrillator is designed to be inserted under the skin and to shock the heart back into a normal rhythm when it starts beating irregularly.

2

8.      Implanted defibrillators have been among the fastest growing group of medical devices. In 2005, 200,000 patients are expected to receive one. Sales of implanted defibrillators have been Guidant's fastest growing product for at least the last three years. Guidant's revenues from these sales between 2002 and 2004 grew over 80 percent, from $992 million to $1.786 billion.

9.      In its public disclosures, Guidant has represented its implantable cardioverter defibrillators ("ICDs") to be essential for saving lives. For example, in its 2002 Annual Report, Guidant describes them as "Lifesaving Therapy for Sudden Cardiac Death (SCD)." Further, touting the technology, Guidant states that "About the size of three stacked silver dollars, Guidant's ICD's have 20 million transistors and more computing power than the original Apollo spacecraft." Similarly, in its 2003 Annual Report, Guidant characterized itself as a "pioneer in the development of implantable defibrillator technologies . . . "and that "[s]uperior engineering spurred the launch of a new impiantable defibrillator in every quarter of the past year."

10.     Guidant also described its manufacturing facilities as "exceptional." In Guidant's 2003 Annual Report, it states "Experienced technicians -- supported by continued investment in state-of-the-art automated manufacturing equipment and expansion – have streamlined manufacturing processes to reduce cost, improve quality, increase through-put and shorten the product development and manufacturing and cycle, speeding the delivery of lifesaving therapies to physicians and patients worldwide." Further expounding on "quality," Guidant emphasized in its 2003 Annual Report that it has "an unrelenting focus on quality in everything" it does. Indeed, Guidant proclaims that: "Quality is essential; lives depend on us. We pledge together to build the most

3



reliable products and services. We work every day to drive Quality into everything that is Guidant."

11.    Guidant also publicly claimed to be an open provider of information to patients and physicians. In its 2003 Annual Report, it stated that "Information for patients, physicians and the public is available around the clock through Guidant's dedicated customer and technical service representatives, as well as its comprehensive web site (www.guidant.com)."

12.    In marked contrast to these assurances, at some point prior to April 2002 that discovery will adduce, Guidant learned that certain of the implanted defibrillators were short circuiting when building a charge to deliver a shock.

13.    In April 2002, after determining that electricity could arc between a wire on the defibrillator and a component known as the "backfill tube," and thereby cause a short-circuit, Guidant and CPI increased the spacing between them. Nevertheless, Guidant and CPI made no disclosure of this change to patients or doctors, and, incredibly, continued to sell the defective versions of its defibrillators.

14.    In November 2002, Guidant made another undisclosed design fix to its defibrillators. At that time, it added extra insulation around the component it distanced from one of the wires in April. Belatedly, it disclosed the November change to the FDA as a part of its annual report to the FDA, which it filed in August 2003.

## COUNT I
### (Strict Liability)

15.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

4

16.     The Guidant Vitality Defibrillator which was designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by Guidant and CPI, was placed in the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into consideration the utility of the product and the risk involved in its use.

17.     Further, the Guidant Vitality Defibrillator and leads which were designed, developed, manufactured, packaged, labeled, marketed, promoted, advertised, sold, and/or distributed by the Defendants, were defective in marketing due to inadequate warnings or instructions.

18.     Guidant Vitality Defibrillators and leads which were designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by these Defendants, were defective and unreasonably dangerous due to inadequate testing.

19.     In the alternative, the Defendants failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from the Guidant Vitality Defibrillator.  The defective nature of this product is a contributing cause of the injuries sustained by Plaintiff.

20.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff had a Guidant Vitality Defibrillator implanted.

21.     Had Plaintiff's decedent been aware of the risks associated with the use of the Guidant Vitality Defibrillator, he would not have used the product.

22.     As a direct and proximate result of all Defendants' conduct, acts and omissions, Plaintiff was caused to suffer damages and may be forced to undergo another surgery to have Guidant Vitality Defibrillator replaced.

5

23.    At all times material hereto, the Defendants acted with conscious disregard of the foreseeable harm caused by the Guidant Vitality Defibrillator warranting an award of punitive damages to Plaintiff.

24.    At all times material hereto, the Defendants' conduct exhibited a level of care evidencing fraud, ill will, recklessness, and/or gross negligence warranting an award of punitive damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

## COUNT II
### (Negligence)

25.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

26.    Guidant, CPI, and fictitious defendants had a duty to exercise reasonable care in designing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing Guidant Vitality Defibrillators and leads.

27.    The Defendants failed to exercise ordinary care in designing, testing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing of the Guidant Vitality Defibrillator and leads.  The Defendants knew or should have known that its defibrillator created an unreasonable risk of bodily harm.

28.    Despite the fact that the Defendants knew or should have known that Guidant Vitality Defibrillators and leads caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market Guidant

6

Vitality Defibrillators to physicians and consumers, including Plaintiff, when there were safer alternative methods of treatment.

29.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above. .

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

**COUNT III**
**(Express Warranty)**

30.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

31.     Before Plaintiff was implanted with Guidant Vitaility Defibrillator and leads and during the period which he used the same, Guidant, CPI and fictitious party defendants expressly warranted that Guidant Vitality Defibrillators were safe.

32.     The Guidant Vitality Defibrillator with leads failed to conform to these express representations of the Defendants in that the Guidant Vitality Defibrillator was not safe and had high levels of serious side effects, including life-threatening side effects, including that it would not work.

33.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants', jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

7

## COUNT IV
### (Implied Warranty)

34.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

35.    At the time Guidant, and ficitious party defendants packaged, labeled, promoted, marketed, advertised, sold, and/or distributed Guidant Vitality Defibrillators for use by Mr. Ellis, the Defendants knew of the use for which the Guidant Vitality Defibrillator with leads was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

36.    Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether the Guidant Vitality Defibrillator with leads was of merchantable quality and safe and fit for its intended use.

37.    Contrary to such implied warranty, the Guidant Vitality Defibrillator was not of merchantable quality or safe or fit for its intended use because Guidant Vitality Defibrillator with leads was unreasonably dangerous and unfit for the ordinary purposes for which it was intended.

38.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointy and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

8

## COUNT IV
### (Fraud)

39.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

40.     Before Plaintiff was implanted with the Guidant Vitality Defibrillator with leads and during the period in which Plaintiff was implanted, Defendants Guidant Hall and fictitious party defendants fraudulently suppressed material information regarding the safety and efficacy of Guidant Vitality Defibrillators and their harmful side effects in order to induce physicians to prescribe and consumers, including Plaintiff to purchase the Guidant Vitality Defibrillator and keep it implanted.

41.     At the time the Defendants suppressed the fact that the Guidant Vitality Defibrillator with leads was not safe, the Defendants were under a duty to communicate this information to Plaintiff.

42.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above,

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.


THOMAS P. MELTON (MEL011)


**OF COUNSEL**:
ALVIS & WILLINGHAM, LLP
1400 Urban Center Drive, Ste. 475
Birmingham, AL 35242
(205) 298-1011

9

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THE ABOVE STYLED CAUSE.**

OF COUNSEL

Please serve Defendants via Certified Mail as follows:

Guidant Corporation
The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

Guidant Corporation
111 Monument Circle, 2900
Indianapolis, 46204

Cardiac Pacemakers, Inc.
4100 Hamline Ave. North
St. Paul, MN 55112

10





T TENOUR
REGISTER
JTGOMERY COUNTY
NTY COURTHOUSE
)X 1667
AL 36102-1667

US. POSTAGE

5.12

METER
3102306

7003 1010 0000 1280 8083

Cardiac Pacemakers, Inc.
4100 Hamline Ave. North
St. Paul, MN 55112

55112+5700-00

0

EXHIBIT

B

ALL-STATE LEGAL®

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- 1378 |
|---|---|---|

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON, an individual,                    GUIDANT CORPORATION, ET AL,

    Plaintiff,                                             Defendants.

NOTICE TO:        CARDIAC PACEMAKERS, INC.
               4100 Hamline Ave. North
               St. Paul, MN 55112

*(filed stamp, vertical:)* 2006 MAY 18 AM — FILED CIRCUIT COURT OF MONTGOMERY COUNTY

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. MELTON at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

__05/24__, 2006        _Melissa J. Rittenour_ K
Date                                        Clerk/Register

RETURN ON SERVICE:

☐    Certified Mail return receipt received in this office on (Date) _____.
      (Return receipt attached hereto).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____
      _____ in _____ County, Alabama, on (Date) _____

_____, 2006
Date                          Server Signature

Address of Server_____
_____               Type of Process Server

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON,

    *PLAINTIFF*

*vs.*

GUIDANT CORPORATION,
GUIDANT SALES CORPORATION,
and Sales representatives, CARDIAC
PACEMAKERS, INC.,and Fictitious
Defendants A, B, C, D, E, F, being those
persons, Sales Representatives, firms or
corporations whose fraud, scheme to
defraud, negligence and/or other wrongful
conduct caused or contributed to the Plaintiff's
injuries and damages, and whose true names and
identities are presently unknown to the
Plaintiff but will be substituted by amendment
when ascertained,

    *DEFENDANTS.*

CV-06-00101-RRA

CV-06-1378

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAY 18 AM 10:37

## COMPLAINT

## PARTIES

1.    Plaintiff, David Emerson, at all times relevant herein, was and is a

resident citizen of Montgomery County, Alabama. On or about May 28, 2004, Plaintiff

was implanted with Guidant Vitality Model A155 serial number 104995 and leads that

had been manufactured by Guidant and or CPI prior to that date.

2.    Plaintiff hereby brings this action against Defendants, Guidant

Corporation, Guidant Sales Corporation (collectively referred to as "Guidant") and

Cardiac Pacemakers, Inc., ("CPI") all of which are corporations doing business in the

1

State of Alabama.

3.    Defendants Guidant and CPI designed, manufactured, tested, marketed, distributed, promoted, and sold Guidant Vitality Models and leads, directly or through wholly owned operating divisions and subsidiaries, including units manufactured prior to May 28, 2004. At all times relevant herein, Guidant was and is a corporation duly formed and existing under and by virtue of the laws of the State of Indiana. Guidant's World Headquarters are located in Indianapolis. CPI is a Minnesota Corporation.

4.    The Plaintiffs claims occurred in Montgomery County, Alabama.

5.    Defendants Guidant Corporation and Guidant Sales are foreign corporations currently engaged in business, directly or by agent in Montgomery County, Alabama.

6.    Defendant Cardiac Pacemakers Incorporated ("CPI") is a foreign corporation located in Minnesota and does business by agent in Montgomery County, Alabama.

## FACTUAL ALLEGATIONS

7.    Cardiovascular disease is the leading cause of death for both men and women in the United States today and claims more lives each year than the next five leading causes of death combined. To treat cardiovascular disease, Guidant develops, manufactures and markets products that focus on the treatment of cardiac arrhythmias, heart failure and coronary and peripheral disease. One product line consists of implantable defibrillator systems used to detect and treat abnormally fast heart rhythms (tachycardia) that could result in sudden cardiac death, including implantable cardiac resynchronization therapy defibrillator (CRT-D) systems used to treat heart failure. An implanted defibrillator is designed to be inserted under the skin and to shock the heart back into a normal rhythm when it starts beating irregularly.

2

8.    Implanted defibrillators have been among the fastest growing group of medical devices. In 2005, 200,000 patients are expected to receive one. Sales of implanted defibrillators have been Guidant's fastest growing product for at least the last three years. Guidant's revenues from these sales between 2002 and 2004 grew over 80 percent, from $992 million to $1.786 billion.

9.    In its public disclosures, Guidant has represented its implantable cardioverter defibrillators ("ICDs") to be essential for saving lives. For example, in its 2002 Annual Report, Guidant describes them as "Lifesaving Therapy for Sudden Cardiac Death (SCD)." Further, touting the technology, Guidant states that "About the size of three stacked silver dollars, Guidant's ICD's have 20 million transistors and more computing power than the original Apollo spacecraft." Similarly, in its 2003 Annual Report, Guidant characterized itself as a "pioneer in the development of implantable defibrillator technologies . . . "and that "[s]uperior engineering spurred the launch of a new implantable defibrillator in every quarter of the past year."

10.    Guidant also described its manufacturing facilities as "exceptional." In Guidant's 2003 Annual Report, it states "Experienced technicians -- supported by continued investment in state-of-the-art automated manufacturing equipment and expansion – have streamlined manufacturing processes to reduce cost, improve quality, increase through-put and shorten the product development and manufacturing and cycle, speeding the delivery of lifesaving therapies to physicians and patients worldwide." Further expounding on "quality," Guidant emphasized in its 2003 Annual Report that it has "an unrelenting focus on quality in everything" it does. Indeed, Guidant proclaims that: "Quality is essential; lives depend on us. We pledge together to build the most

3

reliable products and services. We work every day to drive Quality into everything that is Guidant."

11.    Guidant also publicly claimed to be an open provider of information to patients and physicians. In its 2003 Annual Report, it stated that "Information for patients, physicians and the public is available around the clock through Guidant's dedicated customer and technical service representatives, as well as its comprehensive web site (www.guidant.com)."

12.    In marked contrast to these assurances, at some point prior to April 2002 that discovery will adduce, Guidant learned that certain of the implanted defibrillators were short circuiting when building a charge to deliver a shock.

13.    In April 2002, after determining that electricity could arc between a wire on the defibrillator and a component known as the "backfill tube," and thereby cause a short-circuit, Guidant and CPI increased the spacing between them. Nevertheless, Guidant and CPI made no disclosure of this change to patients or doctors, and, incredibly, continued to sell the defective versions of its defibrillators.

14.    In November 2002, Guidant made another undisclosed design fix to its defibrillators. At that time, it added extra insulation around the component it distanced from one of the wires in April. Belatedly, it disclosed the November change to the FDA as a part of its annual report to the FDA, which it filed in August 2003.

## COUNT I
### (Strict Liability)

15.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

4

16.    The Guidant Vitality Defibrillator which was designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by Guidant and CPI, was placed in the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into consideration the utility of the product and the risk involved in its use.

17.    Further, the Guidant Vitality Defibrillator and leads which were designed, developed, manufactured, packaged, labeled, marketed, promoted, advertised, sold, and/or distributed by the Defendants, were defective in marketing due to inadequate warnings or instructions.

18.    Guidant Vitality Defibrillators and leads which were designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by these Defendants, were defective and unreasonably dangerous due to inadequate testing.

19.    In the alternative, the Defendants failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from the Guidant Vitality Defibrillator.  The defective nature of this product is a contributing cause of the injuries sustained by Plaintiff.

20.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff had a Guidant Vitality Defibrillator implanted.

21.    Had Plaintiff's decedent been aware of the risks associated with the use of the Guidant Vitality Defibrillator, he would not have used the product.

22.    As a direct and proximate result of all Defendants' conduct, acts and omissions, Plaintiff was caused to suffer damages and may be forced to undergo another surgery to have Guidant Vitality Defibrillator replaced.

5

23.    At all times material hereto, the Defendants acted with conscious disregard of the foreseeable harm caused by the Guidant Vitality Defibrillator warranting an award of punitive damages to Plaintiff.

24.    At all times material hereto, the Defendants' conduct exhibited a level of care evidencing fraud, ill will, recklessness, and/or gross negligence warranting an award of punitive damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

## COUNT II
### (Negligence)

25.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

26.    Guidant, CPI, and fictitious defendants had a duty to exercise reasonable care in designing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing Guidant Vitality Defibrillators and leads.

27.    The Defendants failed to exercise ordinary care in designing, testing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing of the Guidant Vitality Defibrillator and leads.  The Defendants knew or should have known that its defibrillator created an unreasonable risk of bodily harm.

28.    Despite the fact that the Defendants knew or should have known that Guidant Vitality Defibrillators and leads caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market Guidant

6

Vitality Defibrillators to physicians and consumers, including Plaintiff, when there were safer alternative methods of treatment.

29.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above. .

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III
### (Express Warranty)

30.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

31.    Before Plaintiff was implanted with Guidant Vitality Defibrillator and leads and during the period which he used the same, Guidant, CPI and fictitious party defendants expressly warranted that Guidant Vitality Defibrillators were safe.

32.    The Guidant Vitality Defibrillator with leads failed to conform to these express representations of the Defendants in that the Guidant Vitality Defibrillator was not safe and had high levels of serious side effects, including life-threatening side effects, including that it would not work.

33.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants', jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

7

## COUNT IV
### (Implied Warranty)

34.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

35.    At the time Guidant, and ficitious party defendants packaged, labeled, promoted, marketed, advertised, sold, and/or distributed Guidant Vitality Defibrillators for use by Mr. Ellis, the Defendants knew of the use for which the Guidant Vitality Defibrillator with leads was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

36.    Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether the Guidant Vitality Defibrillator with leads was of merchantable quality and safe and fit for its intended use.

37.    Contrary to such implied warranty, the Guidant Vitality Defibrillator was not of merchantable quality or safe or fit for its intended use because Guidant Vitality Defibrillator with leads was unreasonably dangerous and unfit for the ordinary purposes for which it was intended.

38.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointy and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

8

## COUNT IV
### (Fraud)

39.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

40.    Before Plaintiff was implanted with the Guidant Vitality Defibrillator with leads and during the period in which Plaintiff was implanted, Defendants Guidant Hall and fictitious party defendants fraudulently suppressed material information regarding the safety and efficacy of Guidant Vitality Defibrillators and their harmful side effects in order to induce physicians to prescribe and consumers, including Plaintiff to purchase the Guidant Vitality Defibrillator and keep it implanted.

41.    At the time the Defendants suppressed the fact that the Guidant Vitality Defibrillator with leads was not safe, the Defendants were under a duty to communicate this information to Plaintiff.

42.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above,

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

THOMAS P. MELTON (MEL011)

**OF COUNSEL:**
ALVIS & WILLINGHAM, LLP
1400 Urban Center Drive, Ste. 475
Birmingham, AL 35242
(205) 298-1011

9

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THE ABOVE STYLED CAUSE.**

_____
OF COUNSEL

Please serve Defendants via Certified Mail as follows:

Guidant Corporation
The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

Guidant Corporation
111 Monument Circle, 2900
Indianapolis, 46204

Cardiac Pacemakers, Inc.
4100 Hamline Ave. North
St. Paul, MN 55112

10

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
05/26/2006
Log Number 511191187

TO:     Jean Holloway
        Guidant Corporation
        4100 Hamline Avenue North, Mail Stop F293
        Saint Paul, MN, 55112-5798

RE:     **Process Served In Alabama**

FOR:    Guidant Sales Corporation (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| TITLE OF ACTION: | David Emerson, Pltf. vs. Guidant Corporation, et al. Dfts. *Name discrepancy noted.* |
| DOCUMENT(S) SERVED: | Summons, Complaint |
| COURT/AGENCY: | Montgomery County Circuit Court, AL Case # CV 06 1378 |
| NATURE OF ACTION: | Product Liability Litigation - Manufacturing Defect - Negligence in manufacturing the defective & unsafe product |
| ON WHOM PROCESS WAS SERVED: | The Corporation Company, Montgomery, AL |
| DATE AND HOUR OF SERVICE: | By Certified Mail on 05/26/2006 postmarked on 05/17/2006 |
| APPEARANCE OR ANSWER DUE: | 30 days |
| ATTORNEY(S) / SENDER(S): | Thomas P. Melton 1400 urban Center Drive Suite 475 Birmingham, AL, 35242 |
| ACTION ITEMS: | SOP Papers with Transmittal, via Fed Ex 2 Day, 790936915272 |
| SIGNED: ADDRESS: | The Corporation Company 2000 Interstate Park Drive Suite 204 Montgomery, AL, 36109 |
| TELEPHONE: | 334-387-7680 |

Page 1 of 1 / CT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

| State of Alabama | **SUMMONS - CIVIL** | Case Number |
|---|---|---|
| Unified Judicial System | | CV-06- 1378 |

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON, an individual,          GUIDANT CORPORATION, ET AL,

    Plaintiff,                                                      Defendants.

NOTICE TO:          GUIDANT CORPORATION
                      The Corporation Company
                      2000 Interstate Park Drive, Ste. 204
                      Montgomery, AL 36109

*(stamped vertically: 2006 MAY 18   FILED CIRCUIT COURT OF MONTGOMERY COUNTY)*

The Complaint which is attached to this summons is important and you must take immediate actions to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. MELTON at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_05/24_ ,2006          _Melissa Rittenour_
Date                                          Clerk/Register

RETURN ON SERVICE:

☐    Certified Mail return receipt received in this office on (Date) _____.
      (Return receipt attached hereto).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____
      _____ in _____ County, Alabama, on (Date) _____

_____, 2006          _____
Date                                          Server Signature

Address of Server_____          _____
_____          Type of Process Server

### IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

DAVID EMERSON,

    *PLAINTIFF*

*vs.*

GUIDANT CORPORATION,
GUIDANT SALES CORPORATION,
and Sales representatives, CARDIAC
PACEMAKERS, INC.,and Fictitious
Defendants A, B, C, D, E, F, being those
persons, Sales Representatives, firms or
corporations whose fraud, scheme to
defraud, negligence and/or other wrongful
conduct caused or contributed to the Plaintiff's
injuries and damages, and whose true names and
identities are presently unknown to the
Plaintiff but will be substituted by amendment
when ascertained,

    *DEFENDANTS.*

**CV-06-00101-RRA**

Cv- 06 -1378

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAY 18 AM 10: 37

### COMPLAINT

### PARTIES

1.    Plaintiff, David Emerson, at all times relevant herein, was and is a resident citizen of Montgomery County, Alabama. On or about May 28, 2004, Plaintiff was implanted with Guidant Vitality Model A155 serial number 104995 and leads that had been manufactured by Guidant and or CPI prior to that date.

2.    Plaintiff hereby brings this action against Defendants, Guidant Corporation, Guidant Sales Corporation (collectively referred to as "Guidant") and Cardiac Pacemakers, Inc., ("CPI") all of which are corporations doing business in the

1

State of Alabama.

3. Defendants Guidant and CPI designed, manufactured, tested, marketed, distributed, promoted, and sold Guidant Vitality Models and leads, directly or through wholly owned operating divisions and subsidiaries, including units manufactured prior to May 28, 2004. At all times relevant herein, Guidant was and is a corporation duly formed and existing under and by virtue of the laws of the State of Indiana. Guidant's World Headquarters are located in Indianapolis. CPI is a Minnesota Corporation.

4. The Plaintiffs claims occurred in Montgomery County, Alabama.

5. Defendants Guidant Corporation and Guidant Sales are foreign corporations currently engaged in business, directly or by agent in Montgomery County, Alabama.

6. Defendant Cardiac Pacemakers Incorporated ("CPI") is a foreign corporation located in Minnesota and does business by agent in Montgomery County, Alabama.

## FACTUAL ALLEGATIONS

7. Cardiovascular disease is the leading cause of death for both men and women in the United States today and claims more lives each year than the next five leading causes of death combined. To treat cardiovascular disease, Guidant develops, manufactures and markets products that focus on the treatment of cardiac arrhythmias, heart failure and coronary and peripheral disease. One product line consists of implantable defibrillator systems used to detect and treat abnormally fast heart rhythms (tachycardia) that could result in sudden cardiac death, including implantable cardiac resynchronization therapy defibrillator (CRT-D) systems used to treat heart failure. An implanted defibrillator is designed to be inserted under the skin and to shock the heart back into a normal rhythm when it starts beating irregularly.

2

8.      Implanted defibrillators have been among the fastest growing group of medical devices. In 2005, 200,000 patients are expected to receive one. Sales of implanted defibrillators have been Guidant's fastest growing product for at least the last three years. Guidant's revenues from these sales between 2002 and 2004 grew over 80 percent, from $992 million to $1.786 billion.

9.      In its public disclosures, Guidant has represented its implantable cardioverter defibrillators ("ICDs") to be essential for saving lives. For example, in its 2002 Annual Report, Guidant describes them as "Lifesaving Therapy for Sudden Cardiac Death (SCD)." Further, touting the technology, Guidant states that "About the size of three stacked silver dollars, Guidant's ICD's have 20 million transistors and more computing power than the original Apollo spacecraft." Similarly, in its 2003 Annual Report, Guidant characterized itself as a "pioneer in the development of implantable defibrillator technologies . . . "and that "[s]uperior engineering spurred the launch of a new implantable defibrillator in every quarter of the past year."

10.     Guidant also described its manufacturing facilities as "exceptional." In Guidant's 2003 Annual Report, it states "Experienced technicians -- supported by continued investment in state-of-the-art automated manufacturing equipment and expansion -- have streamlined manufacturing processes to reduce cost, improve quality, increase through-put and shorten the product development and manufacturing and cycle, speeding the delivery of lifesaving therapies to physicians and patients worldwide." Further expounding on "quality," Guidant emphasized in its 2003 Annual Report that it has "an unrelenting focus on quality in everything" it does. Indeed, Guidant proclaims that: "Quality is essential; lives depend on us. We pledge together to build the most

3

reliable products and services. We work every day to drive Quality into everything that is Guidant."

11.     Guidant also publicly claimed to be an open provider of information to patients and physicians. In its 2003 Annual Report, it stated that "Information for patients, physicians and the public is available around the clock through Guidant's dedicated customer and technical service representatives, as well as its comprehensive web site (www.guidant.com)."

12.     In marked contrast to these assurances, at some point prior to April 2002 that discovery will adduce, Guidant learned that certain of the implanted defibrillators were short circuiting when building a charge to deliver a shock.

13.     In April 2002, after determining that electricity could arc between a wire on the defibrillator and a component known as the "backfill tube," and thereby cause a short-circuit, Guidant and CPI increased the spacing between them. Nevertheless, Guidant and CPI made no disclosure of this change to patients or doctors, and, incredibly, continued to sell the defective versions of its defibrillators.

14.     In November 2002, Guidant made another undisclosed design fix to its defibrillators. At that time, it added extra insulation around the component it distanced from one of the wires in April. Belatedly, it disclosed the November change to the FDA as a part of its annual report to the FDA, which it filed in August 2003.

## COUNT I
### (Strict Liability)

15.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

4

16.    The Guidant Vitality Defibrillator which was designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by Guidant and CPI, was placed in the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into consideration the utility of the product and the risk involved in its use.

17.    Further, the Guidant Vitality Defibrillator and leads which were designed, developed, manufactured, packaged, labeled, marketed, promoted, advertised, sold, and/or distributed by the Defendants, were defective in marketing due to inadequate warnings or instructions.

18.    Guidant Vitality Defibrillators and leads which were designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by these Defendants, were defective and unreasonably dangerous due to inadequate testing.

19.    In the alternative, the Defendants failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from the Guidant Vitality Defibrillator. The defective nature of this product is a contributing cause of the injuries sustained by Plaintiff.

20.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff had a Guidant Vitality Defibrillator implanted.

21.    Had Plaintiff's decedent been aware of the risks associated with the use of the Guidant Vitality Defibrillator, he would not have used the product.

22.    As a direct and proximate result of all Defendants' conduct, acts and omissions, Plaintiff was caused to suffer damages and may be forced to undergo another surgery to have Guidant Vitality Defibrillator replaced.

23.    At all times material hereto, the Defendants acted with conscious disregard of the foreseeable harm caused by the Guidant Vitality Defibrillator warranting an award of punitive damages to Plaintiff.

24.    At all times material hereto, the Defendants' conduct exhibited a level of care evidencing fraud, ill will, recklessness, and/or gross negligence warranting an award of punitive damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

## COUNT II
### (Negligence)

25.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

26.    Guidant, CPI, and fictitious defendants had a duty to exercise reasonable care in designing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing Guidant Vitality Defibrillators and leads.

27.    The Defendants failed to exercise ordinary care in designing, testing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing of the Guidant Vitality Defibrillator and leads. The Defendants knew or should have known that its defibrillator created an unreasonable risk of bodily harm.

28.    Despite the fact that the Defendants knew or should have known that Guidant Vitality Defibrillators and leads caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market Guidant

6

Vitality Defibrillators to physicians and consumers, including Plaintiff, when there were safer alternative methods of treatment.

29.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above. .

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

**COUNT III**
**(Express Warranty)**

30.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

31.     Before Plaintiff was implanted with Guidant Vitaility Defibrillator and leads and during the period which he used the same, Guidant, CPI and fictitious party defendants expressly warranted that Guidant Vitality Defibrillators were safe.

32.     The Guidant Vitality Defibrillator with leads failed to conform to these express representations of the Defendants in that the Guidant Vitality Defibrillator was not safe and had high levels of serious side effects, including life-threatening side effects, including that it would not work.

33.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants', jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

7

## COUNT IV
### (Implied Warranty)

34.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

35.    At the time Guidant, and ficitious party defendants packaged, labeled, promoted, marketed, advertised, sold, and/or distributed Guidant Vitality Defibrillators for use by Mr. Ellis, the Defendants knew of the use for which the Guidant Vitality Defibrillator with leads was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

36.    Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether the Guidant Vitality Defibrillator with leads was of merchantable quality and safe and fit for its intended use.

37.    Contrary to such implied warranty, the Guidant Vitality Defibrillator was not of merchantable quality or safe or fit for its intended use because Guidant Vitality Defibrillator with leads was unreasonably dangerous and unfit for the ordinary purposes for which it was intended.

38.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointy and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

8

## COUNT IV
### (Fraud)

39.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

40.    Before Plaintiff was implanted with the Guidant Vitality Defibrillator with leads and during the period in which Plaintiff was implanted, Defendants Guidant Hall and fictitious party defendants fraudulently suppressed material information regarding the safety and efficacy of Guidant Vitality Defibrillators and their harmful side effects in order to induce physicians to prescribe and consumers, including Plaintiff to purchase the Guidant Vitality Defibrillator and keep it implanted.

41.    At the time the Defendants suppressed the fact that the Guidant Vitality Defibrillator with leads was not safe, the Defendants were under a duty to communicate this information to Plaintiff.

42.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was damaged as described above,

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

THOMAS P. MELTON (MEL011)

OF COUNSEL:
ALVIS & WILLINGHAM, LLP
1400 Urban Center Drive, Ste. 475
Birmingham, AL 35242
(205) 298-1011

9

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THE ABOVE STYLED CAUSE.

_____
OF COUNSEL

Please serve Defendants via Certified Mail as follows:

Guidant Corporation
The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

Guidant Corporation
111 Monument Circle, 2900
Indianapolis, 46204

Cardiac Pacemakers, Inc.
4100 Hamline Ave. North
St. Paul, MN 55112

10